*DAYTON V. HARMON.

1. BRIDGE NOT PART OF A STREET—SEC. 4906, REV. STAT.

A bridge is not a part of a street within the meaning of Sec. 4906, Rev. Stat., requiring county commissioners to keep in repair all parts of roads within municipal corporations to a point where the streets have been curbed and guttered.

2. SECTIONS 860, 2640 AND 4938, REV. STAT., CONSTRUED.

The general provision of Sec. 2640, Rev. Stat., imposing upon municipal corporations the care, supervision and control of all public highways, streets and bridges within the corporate limits is qualified by Sec. 860, Rev. Stat., which, requires county commissioners to keep in repair bridges, except such as are wholly within the municipality where the municipality has the right to demand and receive a portion of the bridge tax levied therein, and also by Sec. 4938, Rev. Stat., which charges the commissioners with the repair of bridges in cities not having a right to demand or receive part of the bridge fund levied therein.

3. DAYTON RESPONSIBLE FOR CONDITION OF BRIDGES.

The city of Dayton, under Sec. 2824, Rev. Stat., declaring that it may levy its own bridge tax and expend the same in the corporation, and Sec. 1707d-4, 89 O. L. 102, clothing its board of city affairs with the exclusive control of the streets and bridges thereof, is chargeable with the repair and control of all bridges therein, and is not relieved from liability for failure to properly maintain such bridges by Sec. 4906, Rev. Stat., requiring county commissioners to keep in repair all parts of roads within municipal corporations to a point where the streets have been curbed.

4. PLEADING CONCLUSIONS OF LAW.

An allegation in an answer, in an action for injuries sustained by reason of the unsafe condition of the approach to a bridge that "the accident was due to the condition of the road and not in any way to said bridge or its condition" states mere conclusions, and not facts, and is open to demurrer.

Prior to May 8, 1891, the southern corporation line of the city of Dayton was at Stewart street, which runs east and west, intersecting Brown street at right angles, and being about a quarter of a mile north

---

*Affirmed by the Supreme Court, without report, 60 Ohio St. 611 [54 N. E. Rep. 1100]. (Minshall, J., dissenting.)

*Edwin P. Matthews*, city solicitor, for plaintiff in error, in the Supreme Court, cited:

The bridge is a part of the road, and to be treated as such: Wabash Railroad Co. v. Defiance, 52 O. S. 262, 300 [40 N. E. Rep. 89]; Beach on Mun. Corp., Sec. 1470, p. 1427, and Sec. 1448; Goshen v. Meyer, 119 Ind. 196.

*Dickson & Clark*, for defendant in error, cited:

All cities of the second class have the right to demand and receive a portion of the bridge fund: Sec. 2824, Rev. Stat.; Mahoning Co. (Comrs.) v. Railway Co., 45 O. S. 401, 405 [15 N. E. Rep. 468]; Perry v. Railroad Co., 43 O. S. 451, 453, 454 [2 N. E. Rep. 854]; Lawrence Rd. v. Commissioners, 35 O. S. 1, 9.

Special statutes relating to the question: Sec. 2824, Rev. Stat., 80 O. L. 508; Sec. 1707d-4, O. L. 102.

Even if Sec. 4906, Rev. Stat., had ever applied to Dayton, Secs. 2824 and 1707d-4, Rev. Stat., have both been revised or amended and passed upon subsequently to the enactment of Sec. 4906, and being the latest expression of the will of the legislature, would govern. State v. Shelby Co., 36 O. S. 326, 329.

of Rubicon creek. The continuation of Brown street at that time was a free, improved, graveled country road, leading for several miles into the country, and crossing Rubicon creek by a bridge. This bridge was constructed by the county commissioners before 1891. It was 251 feet wide, and the road was about forty feet wide, the general level of the bridge floor and of the road being about the same, there being no grade in approaching the bridge from either direction.

On May 8, 1891, the corporate limits were extended, the southern corporation line thereafter intersecting the continuation of Brown street about a quarter of a mile south of Rubicon creek, thus taking into the city the creek bridge, and the part of the road lying between the creek and the new corporation line.

On Sunday evening, April 16, 1893, Alice Harmon went riding in a buggy with a young man named Gebhart. They drove to Kramer's wine garden, south of the city, and started on their return about nine o'clock at night, coming in Brown street. When they came to Rubicon creek the driver partly missed the bridge, whereby the buggy was upset, throwing the defendant in error into the bed of the creek and breaking her arm.

The bridge was in perfect condition and was about the center of the road, but Brown street forms a slight bend or angle at the bridge, so that a straight line drawn from the eye of a traveler in the middle of the street some distance south of the bridge to the nearest electric light in the middle of the street several squares north of the bridge would lie east of the bridge and miss it by several feet. The horse hitched to the buggy was blind, but defendant in error had no knowledge of this fact. At the time the accident happened there were no sidewalks or gutters made, or curbs set south of Stewart street.

On the evening of the injury there was a drizzling rain falling and it was very dark. The bridge being a small iron one, without roof, could not be seen. It had no guard rails along the abutments on either side and no lights on or near it.

The city of Dayton filed a second amended answer, admitting its corporate character and that Brown street is a public street and much used and traveled by the public; admitting the construction of the bridge as stated and that on the evening in question the accident happened.

As a second defense, the city alleged "that said accident was due to the condition of said road and not in any way to said bridge or its condition."

As a third defense, it is alleged that the driver was careless and incompetent, and at the time not in a fit condition to drive, of which the defendant in error knew.

As a fourth defense, the city alleges "that prior to and until May 8, 1891, the southern corporation line of said city intersected Brown street at Stewart street, being about a quarter of a mile north of said bridge; that many years prior to said May 8, said road, which was then outside of the corporate limits of said city, and was a continuation of Brown street, was an improved road, to-wit, a gravel road, and was a free road, from said southern corporation line at Stewart street to the Lebanon pike, a long distance south of said bridge, and passing over said bridge, and said road to its full length, and said bridge, were constructed by the county commissioners of said county of Montgomery, under general laws, by taxation, prior to said May 8, 1891. Upon said May 8, 1891, the corporate limits of said city were extended **southwardly**

so as to include said bridge and a part of said road, which was thereafter known as Brown street, and on April 16, 1893, the sidewalks upon said street had not been made or curbed or guttered south of Stewart street, which is about a quarter of a mile north of said bridge.''

Plaintiff below filed demurrers to the second and fourth defenses and a denial of the allegations of negligence in the third defense. The trial of the case resulted in a verdict for the plaintiff for $1,750.

SHEARER J.

The demurrer was properly sustained to the second defense at the second amended answer. It states mere conclusions, not facts.

The fourth defense, to which a demurrer was sustained, is based upon Sec. 4906, Rev. Stat., which requires county commissioners to keep in repair all parts of roads within municipal corporations to a point where the sidewalks have been curbed and guttered and no further; and it is alleged that the sidewalks upon Brown street had not been curbed and guttered to the point where the accident causing the injury complained of occurred.

It seems clear, however, that the provisions of this section are not available to the plaintiff in error as a defense.

In the first place we do not think the bridge is a part of the street within the meaning of the statutes which apply herein. But, be that as it may, the general law as found in Sec. 2640, Rev. Stat., imposes upon the municipal corporation the care, supervision and control of all public highways, streets and bridges within the corporation, and the duty of keeping them open, in repair and free from nuisance.

This general provision is qualified by Sec. 860, Rev. Stat., which requires county commissioners to keep in repair bridges, except bridges wholly within the croporation where the municipality has the right to a demand and does receive a portion of the bridge tax levied therein; and by Sec. 4988, Rev. Stat., which charges the commissioners with the repair of bridges in cities not having the right to demand and receive part of the bridge fund levied and collected in the corporation.

The question then arises whether Dayton has the right to demand and receive a proportion of the bridge tax levied by the commissioners.

The answer is found in Sec. 2824, Rev. Stat., which authorizes all cities of the second class to demand one-half of the bridge tax levied in the city ; and declares that Dayton may levy its own bridge tax and expend the same in the corporation; and by Sec. 1707d-4, Rev. Stat., 89 O. L. 102, the board of city affairs of Dayton is clothed with the exclusive control of the streets and bridges of the city.

It follows necessarily that the city of Dayton and not the county of Montgomery is chargeable with the control and duty of repair, etc., of the bridge in question; and said demurrer was properly sustained to the fourth defense of such amended answer.

The first instruction to the jury requested by the plaintiff in error was properly refused. It is not law.

All that was proper of the second request is found in the general charge.

The remaining assignments of error are not insisted upon and the judgment will be affirmed.